Yes, good morning, Your Honor. Ruben Salazar on behalf of the petitioner Felipe Flores. This is a case of gross miscarriage in which an alleged legal permanent resident who was illegally deported in 2006 for an illicit trafficking crime for which he never committed. And then he was improvidently re-deported by the DHS, the Department of Homeland Security, in 2013 for a conspiracy crime based on two untimely filed and defectively certified immigration adjustment records after being denied the opportunity to testify at a duly noticed and scheduled burgos hearing on his motion to suppress. Counsel, could I ask a question about that? On the motion to suppress, yes, Justice Christensen. I'm looking at – well – Whoever's got that phone on, could you turn it off? Sorry, Your Honor. You're supposed to turn them off before you come into the courtroom. Sorry, Justice Bias. You can call me Judge. I've never been elevated to the role of a justice, okay? Okay, Judge Bias.  I'm sorry, Judge Christensen, your question is regarding the motion to suppress? My question is about the certification by – it says Jose G. Barr. And my question is about this document. My first question is, did he testify? He did not. Okay. So this looks to me like a certification by Jose Barr that he is certifying himself as being a qualified records custodian, essentially. Is that right? That's correct. So what else was offered? I'm going to ask opposing counsel the same question. What else was offered apart from this to verify his ability to serve as custodian? Nothing was offered other than an unsworn certified letter. This document that Judge Christensen is referring to. That's right. I think you'll find it at A.R. There are three of them for each of the documents. Yes. And they're unsworn and he wasn't there. That's correct. They were unsworn. They were written by him, presumably. And they cite authority to do what he claims to be part of his duties, which is certification and maintenance of the records. But he cites, interesting enough, he cites the INA Section 103.82. But the INA record, which is also found at USC Section 1103.82, that confers upon the Secretary of the Department of Homeland Security's duties and responsibilities as the official having legal custody. If he didn't testify, I have no other questions for you. So that's all I need. Thank you. He did not testify. I'm done. Thank you. And there were no other witnesses produced other than the respondent. You've answered my question. Thank you, counsel. You're welcome, Judge Christensen. I have a question. Okay. So with respect, on the issue of the evidentiary objections, we have four main points to make. One is the DHS concedes that, by statute, the Secretary of Homeland Security has the control, direction, and supervision of all the files in the records, and that you can find that at their brief at pages 21 and 22. So that's not an issue. The issue that the BIA found was that he was an authorized deputy. Well, there is nothing in the record to substantiate that claim by the BIA. First of all, the authorization issue. Officer Barr claims that he was the official having legal custody, not that he was an authorized deputy like the BIA found. He claims he was the official having legal custody under, erroneously, under that INA statute. But the DHS failed to cite any regulation and failed to provide any evidence of any authorization, making him a deputy of the DHS. Secondly, delegation. ACFR Section 2.1 permits a legal custodian, the legal custodian and certification duties to be delegated, but only, quote, by regulation, directive, or memorandum. They didn't point to any such document at the hearing, did they? They didn't point to any regulation, any memorandum, any letter, anything. Nothing. They just came up with this certificate and that's it. An unsworn, certified letter. I don't even call it a certificate, Your Honor. It didn't rise to that level in my opinion. Now, you would have a much harder argument if this Mr. Barr actually showed up at the hearing, correct, and he was placed under oath? Absolutely. That's what a number of cases have held. I think there's those Toros and that's a Fifth Circuit case, but there are a number of other cases that provide that. Or if they had a regulation that listed his job category or something of that nature. Right, but there is a regulation, Your Honor, that lists what the job category is of an ICE officer. And it's not his. This is not. It's an ACFR 287.5A through F, and that says that the powers or authority of an ICE officer or a deportation officer are to interrogate, patrol the border, arrest, conduct searches, execute warrants, and carry firearms. They are policemen for the DHS, Your Honor. Well, I mean, you know. They are not there in an administrative function to certify records except by regulation or by directive or memorandum. Okay. And the other thing is, Your Honor, this designation rule that they claim, there is no more designation rule. ACFR 103.7 has been repealed. But the last thing is very important on the evidentiary issue is attestation clause of ACFR 287.6A. That says that that requires that the certification of an official record must be done by way of an attestation. The word attest appears in the regulation. The same is true with Federal Rule of Civil Procedure 44. But the sole evidence upon which Officer Barr claims the elevated status as an authorized deputy are two unsworn certification letters indicating that his official duties were to create and maintain records, which they weren't. But he does not significantly attest in those certification records. Right. I think Judge Kristen pointed that out. That the two immigration records are genuine copies. Would you like to save some time for rebuttal? I forgot to say that on the outset, Your Honor. Yes, I will, Your Honor. Okay. Thank you so much. I don't think there are any other questions at the moment. But why don't we hear from the government and get their position? Sure. Yes, Your Honor. Thank you. Say you're correct. Where do we go from there? Judge Perguson, where do we go from here? Yeah. The question is, the answer is what we do is we send the matter back down to the BIA. We remand it down there for purposes of determining whether or not, with respect to the petitioner's motion to suppress, whether or not his Fourth and Fifth Amendments constitutional rights were violated. There was an egregious violation for purposes of the motion to suppress, along with whether or not there were statutory and regulatory violations. You're asking for a remand, though. I'm asking for a remand on the issue of the motion to suppress. With respect to the motion to terminate, I'm asking for a reversal because, clearly, there was no the IJ let in records that should have not been in. They were not properly certified. I don't mean to be speaking for Judge Perguson, but if we would agree with you, that means the motion to terminate should have been granted? Yes. There's authority from this circuit, Iran versus. Or should it just go back for them to produce a regulation, a memorandum, or to call him in to testify? With respect to the motion to terminate, it should be reversed, and the court should direct the BIA to order the reversal of the IJ's. Now, couldn't they just reinitiate proceedings against him? Well, if they reinitiate proceedings, now they're going to be able to. Like start all over? Well, I don't think so. Why not? Because the motion to terminate was duly scheduled and duly adjudicated, and it should have been denied because there were no certified records. That was done in Iran versus INS in, I think, 1986 by the Ninth Circuit, where another immigration form, Your Honor, was allowed in, and the Ninth Circuit reversed it and terminated it. So there is authority for that, Your Honor. All right. Let's hear from the government now. May it please the Court. My name is Collette Winston. I represent the U.S. Attorney General, the respondent in this case. Petitioner challenges his alienage, where he himself voluntarily, in one instance under certification under penalty of perjury, filed immigration forms to gain an immigration benefit, stating that he was a citizen of Mexico. Counsel, we haven't been subtle about our problem. You've got to get the evidence into the record, right? The government has to follow the rules, and so if you get to the merits of what's in the records, I think you have a strong argument. But what about this problem with this certification? Well, under the different regulations and rules, the government has met its burden to show that the certification is sufficient. CFR 1287.6A provides that an official record, when admissible for any purpose, shall be evidenced by an official publication or by a copy attested by the official having legal custody of the record or by an authorized deputy. Then there's a statute saying the Secretary of Homeland Security has control, direction, and supervision of all the files and records of DHS. That's in 8 U.S.C. 1103A2. Moreover, the Secretary is authorized to confer on DHS officers or employees any of the powers, privileges, or duties conferred or imposed by this chapter or regulations issued thereunder. That's 8 U.S.C. 1103A6. Finally, 8 CFR 2.1 says there has to be a regulation directive memorandum, and this is the most important, or other means as deemed appropriate by the Secretary in the exercise of the Secretary's discretion. 8 CFR 2.1. Officer Jose Guillermo Barr certified both the form I-485 and G-325, and he doesn't have to come to the immigration court to make that certification under oath because the certification was sufficient. This says that he says he's certified. This says he says he's qualified, right? He does. I realize I'm being colloquial, but that's my problem with it. There's nothing. This is all we have. I'm sorry. There's nothing. This is all we have. Right, and in most cases, these kinds of documents, a document that was submitted in 2002 that was signed by the alien that says that he was from Mexico, that's signed under penalty of perjury. Was he called to the stand at the hearing and asked, is this your signature, is this your? No, he was not. Nothing. All you did was present this document. Well, the document was in his A file, and that's the alien file. That's a different document. We're talking about the September 6, 2013 document, counsel, which forgive me, but I don't have mine with the record site. Judge Payas, do you have it? Which one? Three. Mr. Barr's certification. Mr. Barr's certification, the one dated September 6, 2013, is the one we're talking about. This is the one that where he's. I think it's 337. Yeah, 337 certifies the form I-485. Right, so I think you're going to. And there's another certification on 343 that certifies the form G-325. I think you were a minute ago going to the merits of the document by the petitioner. Not so much the merits of the document, but the existence of the document. But we're saying you have to get into evidence. Basically, we're talking about getting it admitted. The immigration judge has the discretion to admit into evidence anything that is material and probative and relevant. And this was material, probative, and relevant. And we've said in our case law that you have to authenticate these documents. Well, the Iran case, there was no authentication whatsoever. So the Iran case cited by Petitioner's Counsel is very different. It's distinguishable. Here, there is a certification, a federal officer in legal custody of the record. The certification states, my official duties and responsibilities include creation and maintenance of official DHS records. Pursuant to the delegated authority from the Secretary of Homeland Security, legal custodian under 103. Well, where is that delegated authority recorded or noted or contained? Is it in some memorandum that the Secretary has issued? No, not in this record. Is it just sort of the Secretary has just said, oh, all these ICE officers have the authority to attest to the authenticity of documents relating to any petitioner? Well, I don't know about all the ICE officers, but certainly Hosnade Barber. Well, no, I'm asking you, is there a memorandum out there or a directive or regulation or anything? There is the discretion of the Secretary to allow this individual. So the Secretary has this discretion. It's out there in the ether, right? He has it. But where is it recorded that he has exercised that discretion to appoint this category of officers to do what Mr. Barr did? I think the only recordation is Mr. Barr's own word here. Well, that's the problem. That's the problem that Judge Kristen keeps alluding to. Every document that an alien files in his A file where he received the benefit of getting adjustment of status, on the same year that he filed this document, if every one you'd have to bring in the officer to say, yes, it was in his A file. No, you wouldn't have to. But it's not good enough to have Mr. Barr file something that says that Mr. Barr says that Mr. Barr is qualified to be essentially a custodian of records. That's all we have. But in many custodian of records cases, it's the custodian that says, yes, I'm the custodian of records. Usually the custodian of records appears and testifies. But not always. They can waive it. The other side can waive that sort of thing and just stipulate. Or the custodian could file something explaining why the custodian is authorized. And that's what we don't have. Right. But isn't that gilding the lily here? Isn't that asking for? It's requiring the government to follow the rules is what it is. Well, the government did follow the rules. He made his statement. He linked it to the documents. Go ahead. And under the CFR, and those are the rules the government has to follow. No question. Let me ask a follow-up question to Judge Pregerson's question to counsel. Suppose, let's just hypothetically speaking, we disagree with you and conclude that this is not an adequate authoritative. I told you that you should have had the coffee. I told you. Suppose we just disagree with you. Okay. Understood. What do we do? Well, I'm not conceding anything, but if you disagreed with me, and I hope you don't. I'm not asking you to concede one thing. You would have to send it back, and I suppose we'd have to have Mr. Barr come and say, yes, I, under oath, am the custodian of the record, and I looked at the A file. And these documents, which Mr. Flores got the benefit of by getting adjustment of status, were in his A file. That is one way to do it. He'd have to gill the lily and add a special statement on his official duties and how that is his duty here. He says that the remedy should be, the motion to terminate should be granted. Absolutely not. Why not? You had the government had its chance to prove up its case and failed to do so. Well, the government produced a certification from Mr. Barr for each document. And where there was no certification, for example, his birth certificate, that was not admitted into evidence. In a regular, this is a civil case, but in regular civil cases, if you fail to meet your burden of proof, you lose. In this case, we did meet our burden of proof. And even if the court were to find otherwise, there's sufficient information in the record, and there's a certain discretion on the part of the immigration judge and a presumption of regularity here. There's a lot of cases in the Ninth Circuit that says when there's a document and there's some statement that it looks like it's from the alien, and in the file, and there's some certification, even if it doesn't show exactly what your honors are looking for, but there's a presumption of reliability. It's not what we're looking for, it's what's required. So you were saying that there's case law we should look at that would say that this is typically, are we missing something? Because if so, I really want to hear what that would be. Well, when there's a document that is said to be in the A file as this is, in the alien's file, there's a presumption of reliability. There's a presumption of regularity. It would be very unusual for these documents to be made up. So what we need to do, and you're going right to the point, because what the custodian does is tell us it was in the A file. Right. You know what you have to do? That's what you don't have. Is do it right the first time. Just set out what you have to do, what the government has to do, how you get these matters certified. We believe the certification was enough, and where the certification was missing, it was not accepted by the immigration judge. He bent over backwards to say we're not going to accept the birth certificate because Mr. Barr didn't certify it. And here Mr. Barr certified the two documents that were signed by Mr. Flores, who had the same date of birth in both documents, who stated he was from Mexico. I mean, there's almost what more does one want? These are documents that the petitioner himself signed, and now after getting the benefit, he disavows it. Let me ask you, at these immigration hearings, could the government's counsel call Mr. Flores to the stand and say, I want to show you this document, is this your signature? I suppose so. Did you sign this? But can you imagine if every single one of them. Was he there at the hearing? He was not there for my reading. Not Mr. Barr, Mr. Flores. I'm talking about Mr. Flores. Mr. Flores was there, and he accepted that his counsel represented him. But he didn't provide any testimony because when the case got further along, it was clear that when he's an aggravated felon, he didn't qualify for cancellation of removal. You're missing my whole point. Never mind. That's all right. We're over the time limit. Okay. Thank you. If there are no further questions, I would ask that the petition for review be denied. Thank you. A few minutes for rebuttal. A few minutes. Actually, you have one minute, 13 seconds. With respect to the issue of the evidentiary standard, it's not that the document is only probative and material. It's that its admission would not be fundamentally unfair, and that's the part that they can't meet, the government can't meet here. With respect to the presumption of regularity, the government is wrong when they say that a document in the A file is presumed regularity. No. The case law upon which they rely is Espinoza v. Zayanez, which is based on other BIA case law, which is a matter of Mejia, a matter of Barsinas. Those deal with I-213 forms exclusively, and the reason those were presumptively reliable in those cases is because those were a motion to suppress cases in which the Border Patrol testified, I prepared the 213 form. We're familiar with that. Yeah. So the presumption of regularity is a red herring. No, there's no presumption. They have to be authenticated. Iran says, I don't care what kind of method you use, but they must satisfy due process. They must be certified. They were uncertified. The motion to terminate should have been granted. It should be reversed. And with that, Your Honor, I submit the petition should be granted. The matter should be terminated and or remanded for the motion to suppress issue. Okay. Thank you, counsel. We appreciate your arguments. Matter submitted.
judges: Pregerson, Paez, Christen